IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SIDNEY L. COLEMAN,

                                 Plaintiff,

      v.

JIMMY VANG, COLE CONWAY,
ANTHONY BRISKI, DAVID MIKUNDA,
AARON SCHIEFELBEIN, and
SAM SPERRY,

                         Defendants.

                                        OPINION AND ORDER

                                          21-cv-65-wmc

---

In October of 2019, Eau Claire Police Department officers stopped plaintiff Sidney Coleman for an alleged traffic violation, which ultimately led to a search of his car, the execution of a search warrant on his temporary residence, and his arrest. Coleman filed this lawsuit pursuant to 42 U.S.C. § 1983 against six officers involved in those events and his subsequent prosecution in Wisconsin state court, claiming that their actions were motivated by his race and violated his Fourth Amendment rights. Defendants have moved for summary judgment, denying Coleman's arrest had any racial motivation and contending that they did not violate his constitutional rights. Alternatively, defendants assert entitlement to qualified immunity. (Dkt. #33.)

Because there are disputed issues of material fact as to the circumstances surrounding Coleman's arrest, the search of his car, and the search warrant executed on his hotel room, defendants' motion must be denied as to Officer Sam Sperry. However, defendants Jimmy Vang, Anthony Briski, and Cole Conway are entitled to qualified immunity on plaintiff's claims with which they were personally involved. Moreover, it is

undisputed that defendants David Mikunda and Aaron Schiefelbein lacked personal involvement with any of the events relevant to Coleman's claims, as did defendant Conway on plaintiff's claims relating to the search of his vehicle and hotel room alone. Consequently, summary judgment must be entered in favor of all defendants save Sperry.

## FACTS[1]

### A. Background

In October of 2019, Coleman resided with his wife and four children at The Regency Inn and Suites ("Regency Inn") hotel in Eau Claire, Wisconsin. The Regency Inn is known to law enforcement in Eau Claire as a site of frequent and persistent criminal activity, including illegal drug use and sales. At times, the sale and distribution of illegal contraband involves a vehicle arriving at the hotel, briefly remaining in its parking lot while the vehicle's occupant has contact with someone staying at the hotel, and the vehicle then leaving. Those vehicles are also often rented.

### B. Initial Police Investigation

At approximately 10:30 p.m. on October 7, 2019, Eau Claire Police Officer Sam Sperry was on patrol in a fully marked squad car monitoring traffic in the vicinity of the Regency Inn when he noticed a parked sedan running with a passenger, but no driver.

---

[1] Unless otherwise indicated, the following facts are material and undisputed after considering the parties' proposed factual findings, responses, and the evidence of record in a light most favorable to plaintiff. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("We must ... construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

Sperry then observed Coleman exit the hotel and enter the driver's side of the vehicle, which had Illinois license plates of the type commonly used by rental car fleets. Coleman contends, and Sperry disputes, that he was intentionally targeting African Americans while on patrol and picked out his car because it had out-of-state plates. (Dkt. #54, at 3-4.)

While Coleman's car was still parked and running in the hotel lot, Sperry completed a records check on the vehicle, which showed that it was rented from Enterprise. Although Sperry asserts his search showed the vehicle's registration had expired on June 20, 2019, Coleman points out that its registration was likely up to date since the car was rented. (Dkt. #52, at 5-6.) More importantly, a Wisconsin Uniform Citation form that Sperry completed the next day also stated that the vehicle's plate registration expired in 2020. (Dkt. #49-3.)

After the vehicle left the Regency Inn's parking lot, Sperry began to follow it. While Sperry states that he observed Coleman fail to stop at a traffic light before making a right turn and make another improper right turn shortly thereafter, Coleman denies having violated any traffic laws. Regardless, Sperry initiated a traffic stop of Coleman's vehicle allegedly based on his observations of his driving, the vehicle's allegedly expired registration, and his professional experience. (Dkt. #52, at 7.) Meanwhile, Coleman contends that Sperry lacked probable cause to pull him over, "target[ed]" his vehicle, and racially profiled its occupants. (*Id.* at 8.)

## C. Traffic Stop

The parties' versions of the facts diverge even further after Sperry pulled Coleman over. According to Sperry, after activating his squad car's overhead lights, the passenger

door of Coleman's vehicle opened suddenly and an occupant -- later determined to be Timothy Coleman, Sidney's brother -- quickly exited the vehicle, ignored Sperry's demands to show his hands and get back inside the vehicle, and spoke rapidly while walking towards the back of the car.  Sperry contends that he only drew his service weapon from its holster and pointed it at Coleman's brother *after* he disobeyed his orders.  (*Id.* at 9-10.)  In contrast, Coleman contends that after his car came to a full stop, his brother *slowly* exited the vehicle (*id.* at 9), which prompted Sperry to draw his service weapon and point it at Timothy, who had one hand on the car and another on his phone recording the situation.  (*Id.*)

At Timothy's urging, Sidney Coleman then also exited the car and locked its doors. According to Coleman, Sperry immediately pointed his gun at him and yelled for him to show his hands, which were already raised.  (*Id.* at 12.)  Sperry counters that Coleman's left hand was initially inside his coat pocket and while he briefly raised his hands over his head, he placed them back into his coat pockets while asking why he had been pulled over, at which point Sperry ordered Coleman to show his hands again.  (*Id.*)  Sperry then requested emergency assistance from additional patrol officers.

After the backup officers arrived on the scene, Sperry directed Coleman to step back from the vehicle and lift his jacket to allow officers to view his waist and determine if he had any weapons.  Seeing none, Sperry asked Coleman to walk backwards towards him and the other officers, including Eau Claire Police Officers Anthony Briski, Jimmy Vang, and Cole Conway.  The other officers' weapons were unholstered while assisting with the traffic stop, and when Coleman reached Officer Briski, he patted down Coleman for weapons.  After confirming that Coleman did not have any weapons on his person, Briski

placed him into Officer Vang's squad car.  Eau Claire Police Officers David Mikunda and Aaron Schiefelbein arrived on the scene after Coleman was already inside Vang's car. Sperry and the other officers then approached Timothy, determined that he also did not have weapons after a pat-down, and placed him into a squad car as well.

### D. Vehicle Search and Arrest

After Coleman and his brother had been detained, Officers Sperry, Vang, and Briski approached Coleman's car.  Although the parties disagree on the officers' motive for doing so, they agree that the officers saw an open bottle of beer upon reaching the vehicle.  (*Id.* at 24.)  Sperry, Vang, and Briski further claim, and Coleman disputes, that they smelled a strong odor of marijuana as they reached the vehicle, as well as saw a pill bottle in addition to the open alcohol container.  (*Id.* at 23-24.)  Based on the smell of marijuana, the open container, and the pill bottle, Officer Sperry retrieved the car's keys from Coleman, and he and other officers searched the vehicle.  During that search, officers further found an empty hypodermic needle, a prescription pill bottle with marijuana, and a blue gem baggie containing two MDMA pills.  Officers also found a pocketknife and at least one empty bottle of beer, as well as four cell phones and a tablet.

According to Coleman, his brother Timothy volunteered to officers that anything found inside the car belonged to him, and Coleman lacked knowledge of the car's contents because he was merely driving him to the store.  (Dkt. #54, at 15.)  Because Coleman was on parole at the time, Sperry placed him on a probation hold after the traffic stop. Coleman was later arrested for possession of THC, possession of methamphetamine, and carrying a concealed knife.

5

### E.  Search Warrant

After being arrested, Coleman informed Sperry that he was staying at the Regency Inn and attempting to transfer his probation location there.  Sperry then called the on-call Eau Claire County Assistant District Attorney, Angela Beranek, to provide her with information regarding Coleman's arrest.  After consulting Beranek, Sperry drafted an application for a warrant to search Coleman's room at the Regency Inn for further information and evidence related to drug possession and distribution, for which he also served as the affiant.  No other officers participated in drafting or preparing the application.

That search warrant was signed by Eau Claire County Circuit Court Judge Sarah Harless in the early morning hours of October 8, 2019.  At approximately 1:54 a.m. that day, Officers Sperry, Vang, and Briski executed the search warrant on Coleman's room at the Regency Inn.  In the room, they found a marijuana grinder and a glass bong.

### F.  Criminal Prosecution

That same day, Coleman was charged with possession of a controlled substance, possession of THC, and carrying a concealed knife.  Coleman was also issued a Wisconsin Uniform Citation for running a red light.  Two months later, he appeared in court for a preliminary hearing, after which the criminal charges against him were found to be supported by probable cause and his case bound over for arraignment.  (Dkt. #37-1, at 3.)

Although Coleman subsequently moved with his family to Alabama, he continued to attend hearings in his case virtually.  During the pendency of his criminal case, Coleman claims that he suffered a decline in the sale of his books and greeting cards due to the allegedly false charges.  He also contends without proof that he was "denied acceptance

6

into desired universities," apparently because of defendants' charges (dkt. #54, at 20), although the criminal and traffic charges against Coleman were subsequently dropped on the prosecutor's motion on September 25, 2020.

## OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the moving party makes this showing, the non-moving party must then provide evidence "on which the jury could reasonably find for [them]" to survive summary judgment.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  At summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017).[2]

Here, plaintiff was granted leave to proceed against six defendants on a series of Fourth Amendment search and seizure claims.  Defendants seek summary judgment on all of plaintiff's claims, or in the alternative, assert an entitlement to qualified immunity.  The

---

[2] Video evidence can sometimes "evaporate any factual dispute that would otherwise exist."  *United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022).  While plaintiff makes several references to footage that his brother filmed during the traffic stop (dkt. #44, at 4), the Eau Claire Police Department appears to have had dashcams on at least some of its squad cars as early as January of 2016, *e.g.*, Lindsay Alowairdi, *WATCH:  Dashcam video released in Eau Claire officer-involved shooting*, WEAU 13 NEWS, June 30, 2016, https://www.weau.com/content/news/WATCH-Dash-cam-video-released-in-Eau-Claire-officer-involved-shooting-385058271.html, and defendants' own police report (dkt. #40-1, at 12-13) suggests there was a dashcam recording of the incident, neither party has submitted any video to the court.  Footage of the events at issue -- particularly in the moments leading up to the traffic stop -- could have helped resolve some, if not all, of plaintiff's remaining claims.

court will first address plaintiff's claims arising before the initiation of criminal charges against him, then turn to the malicious prosecution claim itself.

## I. Search and Seizure Claims

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend. IV.   Because Section 1983 "does not establish a system of vicarious liability[,]" plaintiff must provide "evidence that each defendant, through her own actions, violated the Constitution."  *Aguilar v. Gaston-Camara*, 861 F.3d 626, 630 (7th Cir. 2017). Plaintiff claims that defendants violated his Fourth Amendment rights in four ways:  (1) by stopping his vehicle without reasonable suspicion that he had committed a traffic violation or crime; (2) by unreasonably pointing a gun at him when he posed no danger to them; (3) by searching his vehicle without probable cause that it contained contraband or evidence of a crime; and (4) by using fabricated evidence to obtain and execute a warrant to search his hotel room.  The court addresses each of these claims below.

### A. Traffic Stop

Plaintiff first contends that defendant Sperry violated his Fourth Amendment rights by effecting a traffic stop without reasonable suspicion that he had committed a crime. Under the Fourth Amendment, an officer may conduct a stop for investigatory purposes if the officer has particularized and reasonable suspicion that the suspect is engaged in illegal activity or involved in a traffic offense.  *Navarette v. California*, 572 U.S. 393, 396 (2014); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  Reasonableness requires "an objective inquiry into all of the circumstances known to the officer at the time he stopped the

defendant." *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968) (reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion").

While defendant Sperry contends that he witnessed plaintiff commit various traffic infractions, plaintiff maintains that he followed traffic laws at all times before Sperry pulled him over and Sperry is lying to justify a stop for other reasons.  Although the relevant question for the jury is whether Sperry had an objectively reasonable belief that Coleman committed a traffic violation, not whether defendant actually committed a violation, this appears to require the jury to decide who is telling the truth as to the events leading up to the stop.  *United States v. Cole*, 21 F.4th 421, 428 (7th Cir. 2021) (citing *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005)).  Accepting plaintiff's version of the facts as true, nothing about his driving would give rise to a reasonable belief that he was breaking traffic laws.  Similarly, although Sperry maintains he had reasonable suspicion to conduct an investigatory stop based on a report regarding the vehicle's registration having expired, *United States v. Miranda-Sotolongo*, 827 F.3d 663, 667-68 (7th Cir. 2016), there is a basis to undermine Sperry's credibility on this as well.[3]

---

[3] Although plaintiff also contends that it was unlawful for defendant Sperry to run a records check on his rental vehicle (dkt. #44, at 3), a police officer's check of a vehicle registration in a database is *not* prohibited by the Fourth Amendment, nor are officers required to have reasonable suspicion of a crime to run one.  *Miranda-Sotolongo*, 827 F.3d at 667-68.

On the other hand, plaintiff's belief that Officer Sperry detained him due to his race, while understandable, lacks any support in the record.[4]  At the same time, "race, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop[.]"  *United States v. Street*, 917 F.3d 586, 596 (7th Cir. 2019) (quoting *United States v. Swindle*, 407 F.3d 562, 569-70 (2d Cir. 2005)); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("the Constitution prohibits selective enforcement of the law based on considerations such as race").

Consequently, other than race, the *only* undisputed fact that Sperry could have relied on to initiate a lawful investigatory stop was plaintiff's mere presence at a hotel known for persistent criminal activity and his brief exit and entry into a lawfully parked rental vehicle.  However, "mere suspicion of illegal activity at a particular place is not enough to transfer that suspicion to anyone who leaves that property."  *United States v. Wilbourn*, 799 F.3d 900, 909 (7th Cir. 2015) (citing *United States v. Bohman*, 683 F.3d 861, 864 (7th Cir. 2011)).  Neither can observing someone sitting in a legally parked car, without more, justify a traffic stop, either.  *Gentry v. Sevier*, 597 F.3d 838, 845-46 (7th Cir. 2010).  Nor can an individual's presence in a high-crime area alone provide the basis for a reasonable suspicion of criminal activity.  *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010).

Taken together, when the undisputed facts are viewed in the light most favorable to plaintiff -- and in the absence of an allegation that he fled upon seeing law enforcement -- at the time Sperry initiated the traffic stop, he lacked reasonable suspicion that plaintiff

---

[4] Plaintiff has neither alleged, nor was he granted leave to proceed on, an equal protection claim.

10

was engaged in illegal activity of any kind. *Illinois v. Wardlow*, 528 U.S. 119, 124-26 (2000). Without more, an officer does not have carte blanche to pull someone over because he is driving a rental car in a high-crime area. Accordingly, defendant Sperry is not entitled to summary judgment on plaintiff's claim that he was unlawfully pulled over.

## B. Use of Force

Plaintiff next alleges that defendant Sperry pointed a gun at both plaintiff and his brother during his traffic stop without justification, thereby violating his constitutional rights. The basic question for an excessive force claim under the Fourth Amendment is whether the officer used "greater force than was reasonably necessary" under the circumstances. *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016)*; Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). This determination is made from the perspective of a "reasonable officer" in light of the *totality* of the circumstances known to the officer, without regard to his or her actual intent or subjective beliefs. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472-73 (7th Cir. 2015); *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). As a result, "whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012)). Nevertheless, the grant of summary judgment on an excessive force claim *may* be inappropriate when parties give materially different accounts of the relevant events. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010); *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009).

11

When an officer points a firearm at a person, the mere pointing of the gun can qualify as a seizure. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009).  In the context of a valid investigatory stop, it is not unreasonable per se for an officer to point a gun at a suspect.  *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989).  However, "gun pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment," *Baird*, 576 F.3d at 345, particularly if officers lack probable cause to suspect an individual has committed *any* crime and execute an unlawful seizure.  *Jacobs v. City of Chicago*, 215 F.3d 758, 773-74 (7th Cir. 2000) ("Under existing Seventh Circuit and Supreme Court precedent at the time the use of force occurred in this case, it appears to be clearly unreasonable for the Defendant Officers to have pointed a loaded weapon at Jacobs for an extended period of time when they allegedly had no reason to suspect that he was a dangerous criminal, or indeed that he had committed any crime at all, Jacobs was unarmed, and when Jacobs had done nothing either to attempt to evade the officers or to interfere with the execution of their duties.").  To determine whether the amount of force used during a seizure is excessive, the court must examine the totality of the circumstances, including "the countervailing government interests at stake." *Id.* at 773.  Other relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight[,]" as well as "whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties." *Id.* (citing *Graham*, 490 U.S. at 397; *McDonald v. Haskins*, 966 F.2d 292, 292-93 (7th Cir. 1992)).

12

Certainly, if the jury credits Coleman's version of his being pulled over under false pretenses, that same jury could credit his version of events leading to his decision to pull and train his weapon on Coleman and his brother, although the fact that Coleman admits his brother immediately exited the vehicle is problematic.  At the same time, the other defendants argue that it was necessary to take out their firearms given the nature of a high-risk traffic stop, even if the jury rejects their claims that Timothy refused to comply with their orders or held an object in any kind of menacing way, which appears to have been Timothy's cell phone in his hand.  Although the latter could have conceivably been seen by defendants as a weapon, they do not contend that they feared he was holding a gun or knife, but merely an "object."  (Dkt. #53, at 8.)  Because all uses of force against plaintiff must be justified, the court will analyze the reasonableness of each defendant's challenged actions.  *Dockery*, 911 F.3d at 467.

When the facts are viewed in the light most favorable to plaintiff, defendant Sperry would have lacked reasonable suspicion that he and his brother had committed any crime at all -- let alone a severe one.  A jury may also find that Timothy was only holding up a phone, which plainly would not pose any danger to him, while complying with all of his orders. (Dkt. #46, at 3.)  Similarly, there is no allegation that *plaintiff* was holding anything at all, much less an object that could have put Sperry at risk.  Moreover, plaintiff claims that after exiting the car, he was always holding his hands up in accordance with Sperry's commands.  Taken together, plaintiff's contentions that he had not committed a crime and that he and his brother complied with Sperry's directions throughout the traffic stop may be enough for a reasonable jury to conclude that plaintiff posed no danger to Sperry.  If

true, it would have been unreasonable for Sperry to point a gun at him.  There are genuine issues of material fact as to defendant Sperry and his use of firearms on plaintiff during the traffic stop that will require a trial to resolve.

Plaintiff's claims that defendants Vang, Briski, and Conway used excessive force against him present a closer question.  Each of those defendants allegedly pointed their guns at plaintiff after responding to the traffic stop at defendant Sperry's request.  Even when the facts are viewed in the light most favorable to plaintiff, there is no evidence suggesting that they had any reason to suspect Sperry was misrepresenting the high-risk nature of the traffic stop for which he requested their assistance.  Taken together, it seems unlikely that a reasonable jury could find that it was unreasonable for defendants Vang, Briski, and Conway to briefly point their weapons at plaintiff when they responded to the traffic stop.  *Graham*, 490 U.S. at 397.

However, plaintiff's claims against defendants Vang, Briski, and Conway fail because they are entitled to qualified immunity.  Plaintiff has not pointed to a closely analogous, binding case or a more general constitutional rule that applies "with obvious clarity" to the defendants' conduct, nor is the court aware of any such case.  *Cibulka v. City of Madison*, 992 F.3d 633, 639-40 (7th Cir. 2021).  Unlike defendant Sperry, who lacked any reason at all to suspect that plaintiff had committed an offense when the facts are viewed in the light most favorable to him, it is undisputed that defendants Vang, Briski, and Conway thought they were responding to a high-risk event.  Accordingly, summary judgment must be entered in their favor.

Finally, while plaintiff maintains that every defendant pointed a gun at him, he has

14

produced no evidence to dispute that defendants Mikunda and Schiefelbein only arrived on the scene *after* he had been placed in defendant Sperry's squad car, and that their focus was Timothy instead.  (Dkt. #54, at 12; Dkt. #52, at 21-22; Dkt. #39, at ¶ 5; Dkt. #38, at ¶ 5.)  Accordingly, they are entitled to summary judgment on plaintiff's use of force claim as well.

## C. Vehicle Search

Plaintiff also contends that defendants unlawfully searched his vehicle after he and his brother were detained.  Because plaintiff concedes that only defendants Sperry, Vang, and Briski played a role in searching his vehicle (dkt. #52, at 23-34), defendants Conway, Mikunda, and Schiefelbein are entitled to summary judgment on that claim.  As for the remaining defendants, they justify their search by claiming that after approaching his car to determine if it had any other occupants, they:  (1) smelled marijuana from outside the vehicle; (2) saw a pill bottle inside of it; *and* (3) could see open containers of alcohol inside as well.  Although plaintiff disputes the officers' first two claims, he concedes that an open container of alcohol *was* visible from their vantage point outside the car.[5]

The so-called automobile exception to the Fourth Amendment's warrant requirement allows officers to conduct warrantless searches of cars if there is probable cause to believe they contain contraband or evidence of a crime.  *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010) (citations omitted).  However, for the automobile exception to apply here, defendants need to have had reasonable cause to effectuate the traffic stop

---

[5] Wisconsin law prohibits open containers of alcohol inside vehicles on public roadways.  Wis. Stat. § 346.935(2).

and detain plaintiff.  *United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a *lawfully stopped* vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.") (emphasis added); *see also Kentucky v. King*, 563 U.S. 452, 462-63 (2011) ("law enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made.").  Even if defendant Sperry had probable cause to search plaintiff's car for evidence of an open container violation -- which the parties do not ultimately dispute if plaintiff's version of the facts is taken as true -- a reasonable jury could find that he lacked authority to stop him in the first place.  Consequently, defendant Sperry cannot rely on the automobile exception to justify the search.[6]

In contrast, defendants Vang and Briski had no basis to question Sperry's claim that he had grounds to stop Coleman, and they both had a basis to search the car based on the undisputed open container seen from outside the vehicle and the presence of a marijuana smell once the car door opened.  Moreover, they are entitled to qualified immunity with respect to the search of plaintiff's vehicle as well.  Specifically, plaintiff has neither

---

[6] Though defendants do not explicitly invoke the exigent circumstances rule, their briefing suggests that it could have provided an alternative justification for their warrantless entry into the vehicle and subsequent seizure of contraband in plain view.  (Dkt. #53, at 7.)  Exigent circumstances allowing a warrantless entry exist where police reasonably believe that their safety may be threatened.  *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010).  According to defendants Sperry, Vang, and Briski, they approached the vehicle to determine whether any other passengers were still inside for their own safety and only saw the open container of alcohol at that point.  However, where officers violate the Fourth Amendment prior to the exigency, they cannot rely on the exigent circumstances rule to justify a subsequent warrantless search.  *King*, 563 U.S. at 469.  When the facts are viewed in the light most favorable to plaintiff, defendant Sperry lacked reasonable suspicion to initiate a traffic stop, so the exigent circumstances rule would not have permitted him to search the car, either.

16

identified nor is the court aware of any binding case law holding that an officer cannot search a vehicle for contraband under the automobile exception after another officer pulled the car over, even if that other officer lacked reasonable suspicion to initiate the stop.  Put differently, in the absence of any evidence suggesting that Vang and Briski played a role in violating plaintiff's Fourth Amendment rights in stopping the car (or evidence that they had reason to doubt Sperry's version of the events leading up to the stop), they are entitled to qualified immunity for their subsequent actions.  *Cf. Liberal v. Estrada*, 632 F.3d 1064, 1082 (9th Cir. 2011) (upholding denial of qualified immunity after plaintiff involuntarily consented to search of vehicle by officers who surrounded him), abrogated in part on other grounds by *Hampton v. California*, 83 F.4th 754 (9th Cir. 2023).

### D. Hotel Room Search

Finally, plaintiff alleges that defendants fabricated evidence and statements against him to obtain a warrant to search his hotel room, which resulted in the discovery of drug paraphernalia that supported the criminal charges against him.  As a threshold matter, it is undisputed that "the Fourth Amendment extends to temporary dwelling places, such as hotel and motel rooms."  *United States v. Lewis*, 38 F.4th 527, 535 (7th Cir. 2022). However, in the absence of exigent circumstances, police officers are only entitled to search a hotel room if they obtain a valid warrant.  *Cf. Riley v. California*, 573 U.S. 373, 382 (2014) ("[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing . . . reasonableness generally requires the obtaining of a judicial warrant").

Because it is undisputed that defendants Conway, Schiefelbein, and Mikunda were

not personally involved in supporting the search warrant application for plaintiff's room (dkt. #52, at 28) *or* searching the room itself (dkt. #36, at ¶ 10, dkt. #38, at ¶ 10, dkt. #39, at ¶ 11), they are entitled to summary judgment on plaintiff's claims relating to the warrant and its execution.

### 1. Search Warrant Affidavit

Affidavits supporting search warrant applications carry a presumption of validity, *Franks v. Delaware*, 438 U.S. 154, 165 (1978), but that presumption can be overcome -- and a warrant rendered invalid -- if there is evidence showing that officers knowingly or recklessly made materially false statements to the judicial officer necessary for her determination that probable cause existed. *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013); *Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003). Similarly, an officer can violate the Fourth Amendment by intentionally or recklessly *withholding* material information from a search warrant affidavit. *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). The materiality of any alleged lies or omissions is determined by eliminating the allegedly false statements, incorporating any allegedly omitted facts, and evaluating whether the resulting "hypothetical" affidavit establishes probable cause. *Id.* (citing *Betker v. Gomez*, 692 F.3d 854, 862 (7th Cir 2012)).

Here, it is undisputed that defendant Sperry was the only officer who prepared the application for and provided an affidavit supporting the search warrant for plaintiff's hotel room. (Dkt. #52, at 28.) Although plaintiff does not identify in his briefing Sperry's allegedly false statements in his supporting affidavit (dkt. #44, at 14), it can be inferred that he would point to (1) the representation that plaintiff committed a series of moving

18

violations before being pulled over; (2) plaintiff's alleged flight after being pulled over; and (3) Sperry's claim that he could smell marijuana emanating from outside plaintiff's vehicle. (Dkt. 40-2, at 2.)

If those disputed facts are stripped from the probable cause analysis, the issuing judge would have had to rely on the drug contraband found in plaintiff's car -- itself found after Sperry's allegedly unjustified stop and search -- to find probable cause existed for the search warrant.  However, probable cause cannot be based solely or primarily on illegally seized evidence.  *United States v. Oakley*, 944 F.2d 384, 386 (7th Cir. 1991).  As a result, the issuing judge would only be left with Sperry's observations of plaintiff's conduct at and after his stop at the Regency Inn, which as discussed above, cannot support a finding of reasonable suspicion that a crime had been committed, let alone provide probable cause for issuance of a warrant.  Thus, a reasonable jury could conclude that Sperry violated plaintiff's Fourth Amendment rights in preparing the search warrant application and supporting affidavit.

### 2.  Search Warrant Execution

Even if an officer obtains a facially valid warrant that describes with particularity the place to be searched and the items or persons to be seized, *Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009), officers can also violate an individual's Fourth Amendment rights if they execute a search warrant *knowing* "that the warrant was not supported by probable cause." *Juriss v. McGowan*, 957 F.2d 345, 351 (7th Cir. 1992); *see also Taylor v. Hughes*, 26 F.4th 419, 430 (7th Cir. 2022) (officer who procures a warrant in violation of *Franks* cannot conduct a search in good-faith reliance on its validity).

19

Again, illegally seized evidence cannot give rise to probable cause. *Oakley*, 944 F.2d at 386. For the reasons discussed above, when the undisputed facts are viewed in the light most favorable to plaintiff, therefore, defendant Sperry at least has not established probable cause to believe that a drug offense had been committed in the hotel's parking lot, much less that a valid stop of Coleman's car and inspection of the car's contents occurred. As a result, a reasonable jury could credit Coleman's version of events and conclude that Sperry violated plaintiff's Fourth Amendment rights in obtaining and executing a search warrant that he knew to be unsupported by probable cause.

While it is also undisputed that defendants Vang and Briski searched plaintiff's room at the Regency Inn under a warrant obtained on the basis of Sperry's supporting affidavit, plaintiff again has not identified *any* evidence suggesting that either they knew or had reason to suspect that the warrant had been obtained under false pretenses. In the absence of evidence from which a reasonable jury could infer that Vang and Briski were aware of Sperry's misrepresentations, there is no basis for the jury to find that Vang or Briski executed the warrant on plaintiff's hotel room knowing that it was issued without probable cause.

### E. Sperry's Entitlement to Qualified Immunity

Finally, as to the remaining Eighth Amendment claims against defendant Sperry, he is *not* entitled to qualified immunity if the jury finds that Sperry affirmatively misrepresented the reasons for his conducting a stop and search of plaintiff's car, since plaintiff's right to be free from unreasonable stops and searches is "clearly established[.]". *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (qualified immunity protects government

officials from personal liability provided that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").  A law is "clearly established" if "every reasonable official would understand" the officer's conduct "is unlawful."  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  In other words, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'"  *Id.*  This doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  Thus, "[w]hen properly applied," this doctrine "protects all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

As noted earlier, to overcome a defendant's qualified immunity defense, plaintiff must point to a closely analogous, binding case that was decided in his favor or a more general constitutional rule that applies "with obvious clarity" to the defendants' conduct, *Cibulka*, 992 F.3d at 639-40, although defendants correctly note that protected rights should not be defined at "too high a level of generality[.]"  (Dkt. #54, at 18 (citing *City and Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)).)

Although he does not highlight any cases by name, plaintiff notes his clearly established constitutional "right to be free from unreasonable searches and seizures."  *Sheehan*, 575 U.S. at 613.  Specifically, he argues that any reasonable police officer would know he could not:  (1) pull a car over without reasonable suspicion that a crime or traffic violation had been committed; (2) use force excessive to the threat posed; (3) obtain a

search warrant with false statements; or (4) search his hotel room without a valid warrant. (Dkt. #44, at 15.)   In particular, all of those rights were clearly established within the Seventh Circuit at the time plaintiff was pulled over in October of 2019.  *See Brendlin v. California*, 551 U.S. 249, 263 n.7 (2007) (collecting cases) (well-established that an officer cannot stop a motorist without at least a reasonable suspicion that a traffic violation has occurred); *Baird*, 576 F.3d at 347 (clearly established that it is unreasonable for an officer to point a gun at a suspect when there is no hint of danger); *McMurtrey*, 704 F.3d at 508 (clearly established that officers cannot obtain a search warrant "by deliberately or recklessly presenting false, material information to the issuing judge"); *United States v. Foxworth*, 8 F.3d 540, 544 (7th Cir. 1993) (clearly established that police may not enter a hotel room without a warrant absent an exception to the warrant requirement).

In asserting an entitlement to qualified immunity, defendants consistently fail to acknowledge the significant number of disputed material facts -- particularly in asserting arguable probable cause to arrest plaintiff -- and rarely, if ever, draw inferences in his favor. The only cases defendants cite in an attempt to show their specific conduct may be protected by qualified immunity are sufficiently distinct to underscore that plaintiff's rights are well-established.  *See Archer v. Chisholm*, 870 F.3d 603, 617 (7th Cir. 2017) (reasonable for law enforcement to briefly draw firearms when executing search warrant supported by probable cause); *Hoeppner v. Billeb*, 17-cv-430-bbc, 2018 WL 5282898, at *9-10 (W.D. Wis. Oct. 24, 2018) (same in context of writ of execution).  Although plaintiff has the burden of defeating a qualified immunity defense once raised -- and is ultimately unable to do so in the case of defendants Vang, Conway, and Briski for the reasons discussed above

-- there are substantial factual disputes in this case as to defendant Sperry's alleged misconduct. Regardless, legal boilerplate and a failure to engage with plaintiff's version of the facts alone cannot support summary judgment in Sperry's favor based on qualified immunity.[7]

## II. Malicious Prosecution Claims

The Fourth Amendment also governs seizures that occur before and after the initiation of a criminal prosecution. *Manuel v. City of Joliet*, 580 U.S. 357, 366-67 (2017); *Kuri v. City of Chicago*, 990 F.3d 573, 575 (7th Cir. 2021). Pretrial detention is unlawful where either "the police hold someone without any reason before the formal onset of a criminal proceeding" *or* when "legal process itself goes wrong -- . . . for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel*, 580 U.S. at 367.

Plaintiff contends that his detention beginning with the traffic stop and continuing through his subsequent prosecution in Wisconsin state court violated his Fourth Amendment rights. *Thompson v. Clark*, 596 U.S. 36, 42 (2022). Such claims of malicious prosecution require proof that: the underlying prosecution was instituted without probable cause; defendant's motive in bringing the charges was "malicious"; and "the criminal

---

[7] Defendants' discussion of qualified immunity in their reply brief (dkt. #53, at 17-21) is a nearly word-for-word copy of the qualified immunity analysis in their opening brief. (Dkt. #34, at 18-22.) Although defendants are not forfeiting their qualified immunity defense, such perfunctory drafting has not assisted the court in its analysis and strongly suggests defendant Sperry's claim of qualified immunity is woefully underdeveloped.

prosecution ended without a conviction." *Id.* at 42, 49.[8]   Even if a defendant did not personally detain or arrest the plaintiff, a malicious prosecution claim can lie where his or her actions cause the plaintiff to be seized without probable cause.  *Id.* at 42-43.

When analyzing such claims, courts consider whether probable cause existed when the plaintiff was charged, not when he or she was arrested.  *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011).  In the context of a malicious prosecution claim, probable cause exists where the facts alleged "would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged."  *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013).  Because it is undisputed that defendants Mikunda and Schiefelbein were not personally involved in the events that led to plaintiff's detention and prosecution, they are obviously entitled to summary judgment on his malicious prosecution claim.  Moreover, because plaintiff has not identified any cases suggesting that defendants Vang, Briski, and Conway could not rely on defendant Sperry's reasonable representations in responding to a traffic stop or searching plaintiff's hotel room, all three are entitled to summary judgment or at least qualified immunity on plaintiff's malicious prosecution claim for reasons already discussed above.

However, for summary judgment to be entered in favor of defendant Sperry, the

---

[8] Although both sides point to the elements of and remedies for malicious prosecution under Wisconsin law for purposes of analyzing plaintiff's § 1983 claim (dkt. #34, at 16 and dkt. #44, at 14), the court explicitly granted plaintiff leave to proceed on a Fourth Amendment malicious prosecution claim.  (Dkt. #13, at 3.)  In the wake of the Supreme Court's decision in *Thompson*, malicious prosecution is a federal constitutional tort standing alone.  596 U.S. at 42-44; *see also Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (noting distinction between elements of state-law and Fourth Amendment malicious prosecution claims since *Thompson*).

court would have to accept his version of events as true and disregard plaintiff's version entirely. Because the court cannot do so based on the conflicting evidence at this stage in the case, it must deny him summary judgment. *Parker*, 845 F.3d at 812. For the reasons discussed above, in plaintiff's telling, Sperry lacked: (1) a reasonable suspicion to pull his car over or detain him; (2) probable cause to search his vehicle; (3) probable cause for a warrant to search his room; and as a result, (4) probable cause to arrest him for the offenses for which he was charged. Specifically, Sperry has pointed to no other evidence that the judge presiding over plaintiff's case could have considered when she determined there was probable cause on December 10, 2019; or when plaintiff was arraigned on February 13, 2020. Nor does he dispute that the charges against plaintiff were dismissed on September 25, 2020. (Dkt. #37-1, at 1-3.) Moreover, malice can be inferred where, as a reasonable jury could find here, "a defendant lacks probable cause and the circumstances indicate a lack of good faith." *Holland*, 643 F.3d at 255.

Finally, once again, defendant Sperry is not entitled to qualified immunity on plaintiff's malicious prosecution claim, since it was clearly established within this circuit by the time of the events in question, that no reasonable officer could have believed it was constitutionally permissible to: (1) arrest someone without probable cause, *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012); or (2) falsify the factual basis for a judicial probable cause determination. *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019). Given the extensive disputes of material fact that remain in this case, plaintiff's malicious prosecution claim against defendant Sperry must also proceed to trial.

ORDER

IT IS ORDERED that:

1)  Defendants' motion for summary judgment (dkt. #33) is DENIED in part and
    GRANTED in part as follows:

    - It is DENIED as to all alleged claims against defendant Sperry.

    - It is GRANTED as to all of plaintiff's claims against defendants Vang,
      Briski, Conway, Mikunda and Schiefelbein.

2)  At the close of this case, the clerk of court is directed to enter judgment in
    favor of defendants Vang, Briski, Conway, Mikunda and Schiefelbein.

3)  The court will issue separately a trial preparation order that confirms deadlines
    and explains trial logistics.

Entered this 15th day of March, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

26